Mrs. Cooper was the Wife of John Bushrod and by him had two younger Children, the Pit. Sarah, and another Daughter. After the death of Bushrod upon a Treaty of Marriage between her and Willoughby Allerton she insisted that Allerton should give his Bond for the payment of ^.100 apiece to the two Daughters, who were not so well provided for as the other Children *R58 of Bushrod, Accordingly Allerton entered into two Bonds for the payment of these several Sums to the Pit. Sarah and the other Daughter and this was upon good Consideration for Mrs. Bushrods part of her former Husbands Estate was to vest in Allerton upon the Marriage and so she put it out of her Power to make any farther provision for these younger Children
The Marriage took effect and some time afterwards Allerton made his Will and gives considerable Legacies to his Wife upon Cond’n that she shou’d discharge. these two Bonds, and died. She Accepts the Legacies and marries the Deft. Cooper and now they refuse to pay the Several Sums pursuant to the Bonds
The Pits, have Exhibited their Bill to Compel the Deft, to a Discovery and to pay the 100£. to them
The Deft. Mrs. Cooper in her Answer pretends that she only Intended that these two Sums shou’d be paid by Allerton in Case Allerton Survived her, not doubting but if she shou’d Survive him she shou’d have it in her Power to provide sufficiently for her Children as she shou’d think proper And she says that she does not know that 'her Husband Allerton gave her more on Acco’t of these Bonds than he wou’d have done if they had not been in the Case
But it is observable that she says nothing of any Provision being Stipulated upon the last Marriage for any other Children And she has as much put it out of her power to do anything for them as she did upon her Marriage with Allerton And that she was Contented with Allertons Wills and therefore it must be supposed that his charging the paym’t of 200;£. upon what he gave her was no great hardship upon her However our Case in short it this
Mrs. Bushrod Mother of the Compl’t Mrs. Berryman upon her Marriage with Mr. Allerton upon the Consideration of her Fortune which was by the Marriage to vest in him Obtained a Bond for the 'paym’t of 100;£. to her Daughter the Compl’t Berryman. Allerton by his Will gives her a part of his Estate and charges it with the paym’t of this 100;6 [169] She gets the Bond into her possession, and now refuses to pay the Money.
And the question is Whether we have not Equity sufficient against her and her present Husband to Compelí her to it
It is true that her insisting upon this Bond was a voluntary Act, But it was a very prudent and Laudable Action to make some Provision for her Children when she was about to transfer *R59 the property of all she had to ano’r Husband. It was her duty to do so Because Children have a sort of natural Right to a share of the possession of their Parents
When she had got that Bond there was a Right vested in the Compl’t to demand the money when it became payable and no Subsequent Act of hers cou’d Controul or alter this right
Her keeping the Bond in her Hands and now endeavouring to Suppress it has only destroyed the Merit of what she did in obtaining it but can have no effect upon our right
A Voluntary Deed is for ever binding upon the Party that makes it his Heirs or Ex’ors — and cannot be revoked with’t an Express power of Revocation reserved in the Deed.
So that if instead of this Bond from Allerton she had given her own Bond before her Marriage to pay each of her Daughters 100;£. She and her Husband, during the Coverture, and after his death she alone wou’d have been liable to pay the money and no Act of hers cou’d have acquitted her of the Duty
Then if she cou’d have no Power to defeat the Bond in that Case, she must have as little in this
Where we have a right vested by the Act of another, first by the Bond and afterwards by the Will of Allerton who charged the payment of this Money upon the Legacies given to her
And tho’ she says she does not know that he gave her more upon the Account of this charge than he wou’d have done without it, yet his Intent is clearly expressed in the Will, that some part of the Legacies were given to Enable her to pay this Money. And her Acquiescing under the Will & Submitt’ g to the Charge by Accepting the Legacies, has with’t Question made her liable
If she had not a good Bargain she might have renounced the Will: And in so Considerable an Estate as Allerton had the Law wou’d have intitled her to an Ample Provision And we must then have taken our remedy upon the Bond But as she has Got the Bond and the Estate out of which it is to be satisfyed in her Hands we can only resort to her
As to Precedents, the Chancery Reports abound in Cases of this nature Villers and Branock 1. Vern. 100. The Lord Chancellor declared if a Man will Improvidently bind himself up by a voluntary Deed and not reserve a liberty to himself by a Power of Revocation, the Court of Chancery will not loose the Fetters he hath put upon himself, but he must lie down under his own folly. For if you wou’d relieve in such a Case you must conse *R60 quently Establish this Proposition That a Man can make no voluntary disposition of his Estate but by his Will only, which would be absurd Reeve and Reeve 1. Vern. 219. A charges Land in D with a [170] Portion for a Daughter by a first venter and then marries and settles part of the Lands for the Jointure of a second Wife, who has no notice of the Charge A believing the Portion wou’d take place of the Jointure gives other Lands in Lieu thereof, The wife by Combination with the Heir refuses to accept the Devise, But it was Decreed that the Daughter shou’d hold the Devised Lands till her Portion was paid Allen and Arme 1. Vern. 365. Where a Man in his Sickness made a voluntary Surrender of Copyhold Lands to the use of his Wife’s Nephew, and afterwards married a Second Wife and had Children and made another Surrender to their use And sought Relief against the first Surrender to set it aside But the Lord Chanc’or declared he saw no Equity in the Case
Bale vs Newman. 1. Vern. 464 — fr Cur. a Voluntary Settle-m’t is not revokeable and the same cannot be Devised by the Will tho’ for the payment of Debts.
Clavering and Clavering 2. Vern. 473. Old S’r Jas. Clavering 1684 makes a Settlement of an Estate subject to some Annuities in Trust for his Grandson and Heir and his Heirs & afterwards in 1690 makes another voluntary Settlement of the same Estate to the use of his Second Son for Life, and to his first and other Sons in Tail and by Will gives a considerable Estate to his Grand Son Altho’ it was prov’d that James always kept the first settle-m’t in his Custody & never published it And it was after his death found among his wast Papers And the Deed of 1690 was often ment’d by him and told the Tenants his Second Son was to be their Landlord after his death Yet he cou’d not be Relieved ag’t the first Settlement, by the Decree of the Lord Keeper and Affirmed in the House of Lords
And it was Decreed for the Pits.
The Defts. Counsel insisted that the Bonds given upon what was disclosed in the Answer previous to the Executing of them might be Construed to be only in Trust for the benefit of the Wife in Case she shou’d Survive her Husband. Cited two Cases 2. Cha. Ca. 26. & 232. And two of the Court were of that Opinion. But neither of the Cases proved anything to the purpose but rather against such a Construction.